

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREENKEEPERS, INC. and | : | CIVIL ACTION |
| GREENKEEPERS OF DELAWARE, LLC | : | |
| | : | |
| v. | : | NO. 04-3747 |
| | : | |
| NIKE, INC. and MACNEILL | : | |
| ENGINEERING COMPANY, INC., | : | |

FILED

OCT 29 2009

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

**MEMORANDUM ON DEFENDANTS' MOTION TO COMPEL DISCOVERY**
**REGARDING FEE ARRANGEMENTS, LOST PROFITS, AND TESTING**
**INFORMATION**

Baylson, J.                                                           October 29, 2009

**I.    Introduction**

Plaintiffs Greenkeepers, Inc. and Greenkeepers of Delaware, LLC (collectively,

"Greenkeepers"), allege, inter alia, that Nike, Inc. ("Nike") and MacNeill Engineering Company,

Inc. ("MacNeill," collectively with Nike, "Defendants") infringed upon Plaintiffs' U.S. Patent

RE 40, 047 ("'047 Patent") on small removable golf cleats when Nike sold golf shoes fitted with

golf cleats designed and sold by MacNeill.  Presently before the Court is Defendants' Motion to

Compel Discovery Regarding Fee Arrangements and Lost Profits and Testing Information

(Docket No. 75), pursuant to Federal Rule of Civil Procedure 37(a).  For the reasons that follow,

Defendants' Motion will be granted in part and denied in part.

**II.    Legal Standard**

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  "The determination of

relevance is within the district court's discretion." Gardella v. Prodex Int'l, Inc., No. 06-CV-

1821, 2007 WL 710289, at *3 (E.D. Pa. Mar. 5, 2007) (Surrick, J.) (internal quotation marks

omitted).  To be subject to discovery, information need not be admissible, so long as it "appears

reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

      If a party receives "evasive or incomplete disclosure" in response to a discovery request,

it "may move for an order compelling disclosure and discovery" under Federal Rule of Civil

Procedure 37(a).  "[T]he party resisting discovery[] bears the burden of persuasion on its

objections." Fidelity & Deposit Co. of Md. v. McCulloch, 168 F.R.D. 516, 520 (E.D. Pa. 1996)

(Joyner, J.).

## III.   Discussion

      Defendants seek to compel Greenkeepers to disclose and produce documents respecting

(1) Greenkeepers' fee arrangements with counsel, (2) the basis, circumstances, and calculation of

any asserted lost profits and lost sales, and (3) empirical testing information respecting cleat

traction.

### A.   Attorney Fee Arrangements

#### 1.   The Parties' Contentions

      In their defenses and counterclaims, Defendants assert that Greenkeepers and its counsel

engaged in inequitable conduct by, inter alia, "intentionally fail[ing] to inform the [United States

Patent and Trademarks Office, ("PTO")] that [Greenkeepers] had knowingly and publicly

displayed the product disclosed in the '047 patent, the so-called Green Keepers Spikeless Golf

Cleat ("GK Cleat"), more than one year prior to the actual filing date of the patent" or "critical

date," making the GK Cleat "prior art . . . under 35 U.S.C. § 102(b)."  (Defs.' Mot. to Compel 8.)

Defendants contend that they accordingly requested that Greenkeepers identify, describe, and

produce documents relating to their retention of "all counsel of record in this lawsuit, including . . . retention letters, attorney-client agreements, and fee agreements."[1] (Defs.' Mot. to Compel, Ex. 1, at 21, Interrog. 17; Ex. 2, at 24, Req. No. 103.)  Greenkeepers objected to such production on the basis that the information sought is "not relevant to the subject matter of this Action," does not appear "reasonably calculated to lead to the discovery of admissible evidence" and is "privileged," "confidential, and/or proprietary."  (Defs.' Mot. to Compel, Ex. 3, at 21, Resp. to Interrog. 17; Ex. 4, at 54, Resp. to Req. No. 103.)  Defendants now seek to compel production of such information because it "concern[s] whether Greenkeepers' patent attorneys stood to gain financially from issuance of the '047 patent" which Greenkeepers now assert against Defendants and "goes directly to the issue of intent, which is part of the inequitable conduct inquiry." (Defs.' Mot. to Compel 9-10.)

Greenkeepers maintain that questions regarding a plaintiff's financial arrangements with its counsel fall outside the scope of permissible discovery because they are not relevant to, and will not lead to the discovery of admissible evidence in, this action, as Greenkeepers aver that this Court has recognized.  (Pls.' Resp. to Defs.' Mot. to Compel 4-5 (hereinafter "Pls.' Resp.").)  Greenkeepers contend that no District Court within the Third Circuit has awarded discovery into

---

[1]In particular, Defendants submitted the following:

INTERROGATORY 17: State the circumstances and describe the terms by which Greenkeepers has retained all counsel of record in this lawsuit, including but not limited to, by identifying documents relating to such retention, including, for example, retention letters, attorney-client agreements, and fee arrangements.

(Defs.' Mot. to Compel, Ex. 1, at 21.)

REQUEST NO 103: All documents memorializing or referring to the terms by which Greenkeepers has retained all counsel of record in this lawsuit, including but not limited to any retention letters, attorney-client agreements, and fee arrangements.

(Defs.' Mot. to Compel, Ex. 2, at 24.)

a plaintiff's attorney fee arrangements based on inequitable conduct allegations. (Pls.' Resp. 5.) Greenkeepers assert that Defendants' assertions of fraud are "baseless," because "the original GK Cleat was disclosed several times to the [PTO] during the course of the[] patent prosecutions." (Pls.' Resp. 6 (emphasis omitted).) Greenkeepers contend that inequitable conduct allegations frequently are asserted against patentees, and that permitting discovery for Defendants' weak allegations risks making every plaintiff patentee "vulnerable to burdensome and intrusive discovery." (Pls.' Resp. 5.) Greenkeepers also aver that Blank Rome, the law firm it has retained, has a "complicated, private process" for determining compensation that is "not at all reflected in its fee agreements with its clients," and that Jim Zegeer, an attorney who originally prosecuted the patent does not represent Greenkeepers in this action, and thus, that the fee arrangement information sought fall outside the scope of any reasonable discovery. (Pls.' Resp. 7.) Greenkeepers accordingly conclude that Defendants' Motion to Compel production of such information should be denied.

Defendants replies that Greenkeepers only contend that they disclosed the general existence of the GK Cleat to the PTO, not that the cleat was sold prior to a year before filing the patent application, which is well-established as a basis for finding inequitable conduct. (Defs.' Reply to Pls.' Resp. 2-3 (hereinafter "Defs.' Reply").) Defendants further aver that because they are entitled to "broad discovery" on the issue of Greenkeepers and their counsel's intent in applying for the '047 patent, the Motion should be granted. (Defs.' Reply 4.)

    2.   <u>**Analysis**</u>

"A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits

materially false information to the PTO during prosecution." <u>Digital Control Inc. v. The Charles</u>
<u>Mach. Works</u>, 437 F.3d 1309, 1313 (Fed. Cir. 2006). "The party urging unenforceability must
show by clear and convincing evidence that the applicant met thresholds of both materiality and
intent." <u>Dippin' Dots, Inc. v. Mosey</u>, 476 F.3d 1337, 1345 (Fed. Cir. 2007) (internal quotation
marks omitted).

The PTO's Manual of Patent Examining Procedure explains that patent applicants have a
duty to disclose information that is "material to patentability," which includes "possible prior
public uses, sales, [and] offers to sell." Manual of Patent Examining Procedure § 2001.04 (8th
ed. 2001). The Federal Circuit has clarified that "the existence of . . . sales prior to the critical
date is a matter that a reasonable examiner would have considered important in deciding whether
to allow the application," "reasonably supports an inference that the inventor's attorney intended
to mislead the PTO," and may be "particularly egregious, because . . . the examiner has no way
of securing the information on his own." <u>Dippin' Dots</u>, 476 F.3d at 1345-46 (internal quotation
marks and alterations omitted). Patents have been repeatedly determined to be invalid on the
basis of pre-critical date sales.[2] Accordingly, it is well established that failure to disclose pre-
critical date sales can support an inference of intent to mislead for purposes of inequitable
conduct.

_____

[2]<u>See, e.g.</u>, <u>Atlanta Attachment Co. v. Leggett & Platt, Inc.</u>, 516 F.3d 1361, 1363, 1368
(Fed. Cir. 2008) (reversing grant of summary judgment in favor of Plaintiff on claim that
Defendant infringed Plaintiff's patent, because "embodiments of [Plaintiff's] patent were on sale
before the critical date," requiring reconsideration of Defendant's allegation of inequitable
conduct); <u>Cargill, Inc. v. Canbra Foods, Ltd.</u>, 476 F.3d 1359, 1363 (Fed. Cir. 2007) (affirming
the district court's grant of summary judgment in favor of Defendants on the basis that Plaintiff's
patents, which were "the subject of a sale prior to the critical date," "are unenforceable due to
inequitable conduct").

Here, Greenkeepers fall short of contending that they in fact disclosed pre-critical date sales of the GK Cleat to the PTO, instead averring that they made the PTO aware of the GK Cleat's existence.[3]  (Defs.' Reply 2-3.)  At this point in the litigation, therefore, the Court cannot determine that Defendants' allegation that Greenkeepers and their counsel failed to disclose pre-critical date sales in the '047 patent application is without merit.

Defendants rely in large part upon Sony Corp. of America v. Soundview Corp., 61 U.S.P.Q.2d 1538, 1539 (D. Conn. 2001), which denied a motion for a protective order to prohibit discovery of an inventor's "attorney-client fee arrangements with its patent reexamination counsel."  The Sony Corp. Court determined that such evidence was "probative of the proposition that [the inventor's] attorneys intended to deceive the PTO," was "of consequence to the determination of the action," and "tend[ed] to establish the inference that in light of [inventor's] attorneys' financial motive to secure the patent, such motive could have impelled them to intend to mislead or deceive the PTO."  Id. at 1540-41.  In Sony Corp., the party seeking discovery contended that the inventor's attorneys misrepresented to the PTO the scope of the subject matter, dates of conception and reduction to practice, and materiality of certain references claimed in the inventor's patent application.  Id. at 1540.  Because failure to disclose pre-critical date sales can support an inference of intent to mislead for purposes of inequitable conduct, as detailed above, this Court concludes, for the same reasons stated in Sony Corp., that evidence of Greenkeepers' "attorney-client fee arrangement clearly has some tendency of making the existence of wrongful intent more or less probable than it would be without the evidence."  Id. at

---

[3]Greenkeepers' Response to Defendants' Motion to Compel cites "Exhibit A (excerpts from prosecution history of [the GK Cleats' original] patent)" for support (Pls.' Resp. 6), but no such Exhibit was attached to the Response and made available to the Court.

1540.[4]

This Court also rejects Greenkeepers' averments that discovery of attorney fee information is improper because Blank Rome's compensation determination is "complicated, private," and "not at all reflected in its fee arrangements with its clients," and Mr. Zegeer "has nothing whatsoever to do with the present litigation." (Pls.' Resp. 6-7.)  Neither averment changes the fact that Greenkeepers' attorney fee information, at this point, may have some tendency to show that Greenkeepers' attorneys had an intent to defraud the PTO:  The former assertions respecting Blank Rome are unsupported and self-serving, and the latter only speaks to Greenkeepers' intent in filing the current action, not in filing the initial '047 patent application, which is the relevant time for purposes of the inequitable conduct inquiry.

However, because of the Defendant's representations and the sensitivity of attorney-fee arrangements in the context of attorney-client communications, this Court will examine the material in camera before determining whether the documents are discoverable.  In connection with the in camera submission of documents, counsel for Defendants may supply the Court with a letter explaining the documents, without reference to the substance of the documents, for which all counsel should receive copies.  In submitting the documents, counsel for Defendants may suggest redactions in the event the Court believes that some or all of the documents should be produced.

---

[4]Although Greenkeepers contended in their responses to Defendants' discovery request that the attorney fee arrangement information sought is privileged, Greenkeepers did not reassert this defense in their Response to Defendants' Motion for Summary Judgment.  Even assuming arguendo that Greenkeepers maintain this defense, absent special circumstances, attorney fee information is not privileged.  See Montgomery County v. MicroVote Corp., 175 F.3d 296, 304 (3d Cir. 1999); 8 J. Wigmore, Evidence § 2291 (McNaughton rev. ed. 1961).  At no point has Greenkeepers identified any such circumstance.

**B.**      **Lost Profits**

    **1.**      **The Parties' Contentions**

Greenkeepers' Amended Complaint alleges that Defendants have deprived Greenkeepers

of "sales, profits, royalties, and other related revenue which Greenkeepers would have made or

would enjoy in the future" (Am. Compl. ¶ 13, Docket No. 57), but Defendants contend that they

"are unaware of any basis for [the] allegations regarding lost sales and profits," (Defs.' Mot. to

Compel 11). Defendants sought discovery respecting the "portion of the alleged damages" based

on lost sales and profits, and the basis, circumstances, and documents relating to any alleged lost

sale or profit.[5] (Defs.' Mot. to Compel, Ex. 1, at 18-19, Interrog. 14, Ex. 2, at 22, Req. Nos. 90,

91.) Greenkeepers objected, contending that such discovery "seeks information relating to expert

discovery" and need not be produced until the expert discovery deadlines provided by the Court's

Scheduling Order (Scheduling Order ¶¶ 11-13, Docket No. 54), and that such production is

dependent upon information in Defendants' possession. (Defs.' Mot. to Compel, Ex. 3, at 18-19,

---

[5]      Specifically, Defendants requested the following:

INTERROGATORY 14: With respect to Greenkeepers' allegations that Dependants' alleged
infringement caused Greenkeepers damage, state the basis for each allegation of damage,

. . .

c.      state whether or not all or any portion of the alleged damages should be based on lost
profits, and state the basis for this measure of damages.

d.      state the circumstances of each lost sale Greenkeepers has suffered, including but not
limited to, for each such lost sale, the identity of the customer, the identity of any
competitors seeking the same sale, and the basis for Greenkeepers' contention that the
sale was lost . . . .

(Defs.' Mot. to Compel, Ex. 1, at 18.)

REQUEST NO. 90: If Greenkeepers claims that it lost sales as a result of Defendants' conduct, all
documents relating to such lost sales.

REQUEST NO. 91: If Greenkeepers claims that it lost profits in this action as a result of
Defendants' conduct, all documents relating to such lost profits.

(Defs.' Mot. to Compel, Ex. 2, at 22.)

Scheduling Order,[6] and that such production is dependent upon information in Defendants'

possession. (Defs.' Mot. to Compel, Ex. 3, at 18-19, Resp. to Interrog. 14; Ex. 4, at 48-49,

Resps. to Req. Nos. 90-91.) Defendants now seek to compel the disclosure of, and production of

information respecting, Greenkeepers' asserted lost sales and profits.

    In particular, Defendants aver that Greenkeepers have the burden of proof on damages

and must have supporting, affirmative evidence, and that such evidence "is of the sort that would

be in a plaintiff's possession," such as their "capacity[] to produce golf cleats." (Defs.' Mot. to

Compel 13.) Defendants further contend that Greenkeepers' "unjustified delay could seriously

prejudice" Defendants' ability to prepare their defense and depose fact witnesses regarding lost

sale or profit information. (Defs.' Mot. to Compel 13-14.)

    Greenkeepers respond that they will set forth their damage theories in their expert report

on the matter, and reassert that discovery at this stage is premature, because "Greenkeepers

neither has received the discovery from Defendants that it needs to form such damage theories"–

namely, Defendants' financial information that Greenkeepers has sought for "well over a year"

and recent revelation that it has been selling replacement cleats, in addition to shoe products–

"nor has Greenkeepers had adequate time to review the necessary discovery to finalize its

theories." (Pls.' Resp. 8-9.) Greenkeepers also contend that requiring them to prematurely

disclose their inchoate damage theories "would not be binding . . . , and would not prevent

[them] from later amending [their] theories as the factual record in this case develops." (Pls.'

Resp. 9.) Greenkeepers then aver that Defendants' assertions of prejudice are unsupported, and

---

[6]    The Scheduling Order sets January 16, 2010 as the deadline for expert reports for
which a party bears the burden of proof, January 30, 2010 for rebuttal expert reports, and
February 13, 2010 for all expert discovery. (Scheduling Order ¶¶ 11-13, Docket No. 54.)

accordingly request that the Motion to Compel be denied with respect to lost profits and sales. (Pls.' Resp. 10-11.)

In reply, Defendants assert that case law requires Greenkeepers to disclose and to produce detailed information relating to alleged losses, and that "[o]nly Greenkeepers can provide information" as to their purported production capacity, the demand for their cleats, and their lost profits. (Defs.' Reply 5.) Defendants further contend that they have already produced the requested financial information and disclosed their sale of replacement cleats back in July 2009. (Defs. Reply 5.) Defendants thereby conclude that "Greenkeepers has long had all the information it needs to respond to Defendants' discovery on this issue," and should be compelled to disclose the basis of the lost profits and lost sales sought at this stage in the litigation. (Defs. Reply 5.)

### 2. <u>Analysis</u>

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires a party to provide

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

"Defendants have a right to discover the basis of plaintiff's claim against them, for such is the purpose of discovery." <u>Pettyjohn v. Goodyear Tire & Rubber Co.</u>, No. 91-2681, 1992 WL 94895, at *8 (E.D. Pa. Apr. 20, 1992) (Naythons, <u>M.J.</u>); <u>see also</u> <u>Directory Dividends, Inc. v. SBC Commc'ns, Inc.</u>, No. 01-1974, 2003 WL 23208804, at *3 (E.D. Pa. Dec. 31, 2003) (Surrick, <u>J.</u>); <u>see, e.g.</u>, <u>Dipietro v. Jefferson Bank</u>, 144 F.R.D. 279, 280-81 (E.D. Pa. 1992) (Naythons, <u>M.J.</u>) (granting a defendant's motion to compel the plaintiffs to identify how damages were calculated in order to provide the defendant with "a reasonable opportunity to rebut" plaintiffs'

damages claims).

Greenkeepers, as a patent owner seeking to recover lost profit damages, "must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits." Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1293 (Fed. Cir. 2007) (internal quotation marks omitted). The Federal Circuit, however, has affirmed lost profit awards based on a wide variety of theories, including "reconstruction theories" in which the patent owner shows lost profits based on its market share, Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1377 (Fed. Cir. 2003), and "the four-factor Panduit test, which requires a showing of (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of profit that would have been made," DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1329 (Fed. Cir. 2009).

As is well known in litigation of this type, proof of lost profits damages consists of several elements. First, are the facts relevant to damages, both the fact of damage and the amount of damage. Respecting such facts, both parties should exchange all documents containing underlying records which may be relevant on the topic of amount of damages, such as sales records and financial statements. Similarly, the parties should exchange all information concerning the fact of damage. As to damage computations, in the event that either party has documents which reflect internal computations of damages, whether in draft or otherwise, that have not then been the subject of expert work, attorney-client communications, or attorney work product, these should also be produced. However, to the extent that either party intends to rely on experts for their damage calculations, based on the underlying facts, the Court agrees with

11

Greenkeepers that those calculations, as prepared by experts, need not be turned over until the expert reports are required.  Greenkeepers could pursue one or several lost profit theories, and expert reports on damages facilitate Greenkeepers' ability to choose which theory or theories to pursue.  This ruling respecting proof of damages applies to both parties.

Insofar as the parties dispute the schedule for the exchange of rebuttal reports, the Court requests, that counsel renew their discussions regarding a schedule that is fair to both sides, and allows each to review the initial expert reports, respond appropriately, and complete any additional expert discovery.  The Court will approve any schedule concerning expert discovery to which the parties agree, but if counsels' discussions do not yield agreement, upon request, the Court will schedule a telephone conference for this purpose.  Also, if disputes remain about discovery on damages, the Court will schedule a hearing, promptly.

**C.      Empirical Testing Information**

**1.      The Parties' Contentions**

Defendants also contend that Greenkeepers' infringement claims require them to prove that the cleats have a "functional limitation," and must "come forward with affirmative empirical evidence in order to make its case, i.e. traction testing of cleats."  (Defs.' Mot. to Compel 14.) Defendants accordingly requested that Greenkeepers identify and describe "any tests, reviews, evaluations, or analyses conducted by or on behalf of Greenkeepers, or in Greenkeepers' possession" that addressed "lateral stability and/or traction," and detail how the tests "fall within the scope of any claim of the Relevant Patents."[7]  (Defs.' Mot. to Compel, Ex. 1, at 17, Interrog.

---

[7]In particular, Defendants requested the following:

INTERROGATORY 13:  Identify any tests, reviews, evaluations, or analyses conducted by or on behalf of Greenkeepers, or in Greenkeepers' possession (hereafter "tests"), . . . and for each such

13; Ex. 2, at 11-12, 16, Req. Nos. 23-25, 50.)  In response, Greenkeepers objected, contending

that Defendants' sought "the premature disclosure of expert testimony, and stating that

Greenkeepers would "produce documents in accordance with the applicable case management

order(s) from the Court."  (Defs.' Mot. to Compel, Ex. 3, at 17, Resp. to Interrog. 13; Ex. 4, at

13-15, 28, Resps. to Req. Nos. 23-25, 50.)  Defendants aver that Greenkeepers has only produced

two tests, "both of which were conducted years before the patent-in-suit actually issued and did

not test any accused cleats."  (Defs.' Mot. to Compel 15.)  Defendants now seek to compel

Greenkeepers to "provide [their] contentions regarding the results of th[ese] tests," contending

that "Defendants need to evaluate those arguments immediately," because if the tests do not

support Greenkeepers' claims, Greenkeepers "may be in the position of having brought a federal

------------------------------------------------

test:

   a.     state the circumstances, date, nature, and results of such test;

   b.     state whether Greenkeepers contends that the Cleat tested provided, increased, enhanced, improved, decreased, reduced or lessened, or in any other way impacted, lateral stability and/or traction, and state the basis for such contention;

   c.     state whether Greenkeepers contends that the Cleat tested falls within the scope of any claim of the Relevant Patents, identify each such claim(s), and state the basis for such contention . . . .

(Defs.' Mot. to Compel, Ex. 1, at 17.)

    REQUEST NO. 23:  All documents (including articles, studies, papers, presentations, abstracts, test results, and laboratory reports) authored by any Person relating to studies, tests, or evaluations of Cleats, including but not limited to studies, tests, or evaluations on the subject of "traction" or "lateral stability" as those terms are used in the Relevant Patents.

    REQUEST NO. 24:  All documents relating to the extent to which any Cleat provides or fails to provide lateral stability through the plane of a golf swing.

    REQUEST NO. 25:  All documents relating to the extent to which any Cleat enhances or fails to enhance traction through the plane of a golf swing.

    REQUEST NO. 50:  All documents relating to Greenkeepers' analysis, consideration or evaluation of whether any of Defendants' Products infringe any claim of the Relevant Patents, including without limitation all documents concerning any test or evaluation of any of Defendants' Products conducted by Greenkeepers or on Greenkeepers' behalf.

(Defs.' Mot. to Compel, Ex. 2, at 11-12, 16.)

patent infringement lawsuit without having conducted a legally sufficient pre-filing investigation." (Defs.' Mot. to Compel 15-16.)  In addition, Defendants aver that the current "expedited schedule" "may . . . seriously prejudice[]" them by only providing their experts with two weeks in which to evaluate Greenkeepers' expert reports.  (Defs.' Mot. to Compel 16.)

Greenkeepers respond that they have already "produced all such  testing in [their] possession," as they contend Defendants have conceded in their Motion to Compel, and that such production provides the details about the tests that Defendants seek.  (Pls.' Resp. 11-12.) Greenkeepers assert that Defendants' suggestion that Greenkeepers did not meet their pre-filing investigation requirement is "spurious[]" because plaintiffs bringing patent infringement claims need only have "a good faith, informed comparison of the claims of a patent against the accused subject matter" and need not conduct pre-filing testing.  (Pls.' Resp. 12-13 (internal quotation marks omitted).)  Greenkeepers maintain that the Court's Scheduling Order already sets forth a time for expert discovery, and aver that the Court already rejected Defendants' request for additional time for their experts to evaluate the reports of Greenkeepers' experts, and that Defendants inappropriately challenge this Order by way of a motion to compel, rather than a motion to amend the schedule.  (Pls. Resp. 14-15.)  Greenkeepers further contend that they attempted to come to an agreement with Defendants respecting a requested modification of the schedule, and agreed to permit Defendants five weeks to submit rebuttal reports, but that Defendants refused to compromise for any period short of six weeks.  (Pls.' Resp. 15.) Accordingly, Greenkeepers conclude that Defendants' Motion to Compel should be denied.

In reply, Defendants aver that "Greenkeepers now effectively admit[] in [their] response that [they] performed no empirical testing prior to suing Defendants for infringement." (Defs.'

Reply 6.)  Defendants reassert that their experts require six weeks to file rebuttal reports, because golf cleat testing is complex and "can be highly weather dependent."  (Defs.' Reply 7.) Defendants contend that the Greenkeepers eventually proposed, but later withdrew a five week period for Defendants to file rebuttal expert reports, assert that the parties disagreed with respect to permitting Defendants "one additional week," propose a revision to the case schedule that permits them six weeks to file rebuttal reports, and ask the Court to enter "Defendants' variation of Greenkeepers' initial proposed revision to the case schedule."  (Defs.' Reply 7-8.)  Defendants thereby request that their Motion to Compel be granted.  (Defs.' Reply 8.)

    2.    <u>Analysis</u>

      As a preliminary matter, Defendants' Motion to Compel both seeks to compel Greenkeepers to produce details about, and their arguments respecting, the two traction tests they have already turned over to Defendants, and to amend the Scheduling Order to permit Defendants six weeks after receiving Greenkeepers' opening expert reports in which to submit rebuttal expert reports.  To the degree that Defendants seek to compel production, Greenkeepers have explained that the already produced reports provide the details Defendants seek.  The Court has no basis in the record for concluding that Greenkeepers has withheld information respecting these reports from Defendants.

      If Greenkeepers has additional information on their empirical evidence, they should either produce such evidence or specify why it is not subject to discovery.  In any event, the Court will require a responsible officer of Greenkeepers, with knowledge, to supply Defendants with a declaration certifying that Greenkeepers has no additional information on this point.  Upon request from Greenkeepers, Defendants should supply a similar declaration, as the Court believes

that discovery in cases such as this should be evenhanded.

## IV.    <u>Conclusion</u>

Based on the above analysis, this Court grants in part and denies in part Defendants'

Motion to Compel.  An appropriate Order follows.

O:\CIVIL\04-3747 Greenkeepers v. Nike\Greenkeepers v. Nike - Memo Mot Compel.wpd

ENTERED

OCT 2 9 2009

CLERK OF COURT

16